## Recommendations for Parole

RENO, Attorney General, May 17, 1939. — You have asked to be advised as to the duties and powers of the boards of trustees of State penitentiaries and the boards of inspectors of the various county jails and the Board of Pardons in recommending to the Governor the release of convicts on parole. The first question submitted is as follows:

"(a) Whether the boards of trustees or inspectors of the penitentiaries and jails are required, when acting upon petitions for paroles by prisoners who have served their minimum sentences, to consider not only their behavior records while in jail but also other factors (such as their previous criminal records) in determining whether such petitioners may be released with the assurance that they will not engage in an offensive course of conduct".

Commutations of sentences and parole of convicts are governed and regulated by the Act of May 11, 1901, P. L. 166, the Act of May 10, 1909, P. L. 495, and the Act of June 19, 1911, P. L. 1055.

The Act of 1901, supra, provides for the commutation of sentences for good behavior of convicts in prisons, penitentiaries, workhouses, and county jails in this State. Where a person is convicted and sentenced to a term or terms equal to or exceeding one year, the act provides that the convict, by his good behavior, may earn a deduction in his sentence of two months for the first year, three months for the second year, four months each for the third and fourth years, and five months for each subsequent year. This deduction or allowance is commonly called "good time" commutation.

The Act of 1909, supra, authorizes the release on probation of certain convicts instead of imposing sentences and the appointment of probation officers, regulates the manner of sentencing convicts in certain cases and provides for their release on parole. Optional imposition of minimum and maximum sentences is per-

mitted by the act, but where the court does not impose a minimum and a maximum sentence the act provides that the sentence shall be calculated to read as a minimum and maximum sentence in which the minimum shall be fixed at one fourth of the maximum sentence. At the expiration of the minimum sentence, the convict is eligible for his release on parole, provided the board of inspectors or the board of trustees, as the case may be, so recommends, and the Board of Pardons also recommends to the Governor that he be released on parole.

The Act of 1911, supra, is in effect a reënactment and an extension of the provisions of the Act of 1909. It provides for the release on probation of certain convicts instead of imposing sentences, the appointment of probation and parole officers and the fixing of their salaries and expenses, regulates the manner of sentencing convicts in certain cases, provides for their release on parole and imposes additional penalties for commission of crime during parole *and* the rearrest and reconviction for breach of parole rules; it indicates also the powers and duties of the boards of prison inspectors of penitentiaries.

While, under the provisions of the Act of 1901, the only prerequisite for the allowance of commutation is the convict's good behavior while confined, the Acts of 1909 and 1911 provide that the recommendation for the release on parole is conditioned upon a finding and determination by the board of trustees or the board of inspectors "that there is a reasonable probability that such applicant [convict] will live and remain at liberty without violating the law".

The question, therefore, arises as to what facts and factors shall constitute the basis for a determination by the board of trustees or board of inspectors, as the case may be, that there is a reasonable probability that the convict will live and remain at liberty without violating the law.

We shall premise our discussion by stating, as the courts have repeatedly held, that the release of a prisoner on parole is not a right which the prisoner may assert and enforce, but is a matter of grace which the statutes have vested in the Governor upon recommendation by the boards of trustees or inspectors and the Board of Pardons: Commonwealth ex rel. v. Ashe, 320 Pa. 341 (1936).

The powers of the boards of trustees and boards of inspectors, and, for that matter, the Board of Pardons and the Governor, are similar and analogous to the powers vested in and exercised by the courts in releasing prisoners on parole. Like the courts, they perform a judicial function and exercise a judicial discretion. In the exercise of this discretion, however, the boards, like the courts, are charged with the duty of making a proper and conscientious appraisal of each individual prisoner in determining whether or not he merits and deserves to be released on parole. The rule to be followed in arriving at a determination of whether or not a prisoner should be recommended for release on parole is the one stated by the court in the case of Commonwealth v. Kimmel, 6 D. & C. 637, which is as follows:

"Paroles are grantable only when the court is convinced that the character of the prisoner and the circumstances of the case are such that he is not likely to engage again in an offensive course of conduct and that the public good does not require that he should suffer the penalty imposed by law . . . The parole system, at best, is a grafting upon our jurisprudence and is so potential with inherent capacity for grave abuse that we shall not extend its operation beyond the plain letter of the act. Under the acts, it is a matter of grace, not of right, and we will not be moved except for reasons that absolutely overcome our powers of resistance."

It is obvious, therefore, that before the boards of trustees and boards of inspectors can conscientiously and properly recommend a convict for release on parole, they

must take into consideration the convict's behavior and attitude while in prison so as to determine whether he has sufficiently modified his outlook on life and freed himself from any criminal propensities; they must examine the nature and circumstances of the crime for which he was convicted; they must scrutinize the convict's history prior to his present confinement, his personal habits, inclinations and proclivities. The convict's criminal record, and the nature and circumstances of such previous crimes, is a sure index in the determination of whether he will probably live at liberty without violating the law. It cannot be conceived how an appraisal of a convict's fitness to be released on parole could be made without examining and without considering his prior criminal record.

It is clear, therefore, that the boards of trustees and the boards of inspectors, in arriving at a decision as to whether or not a convict should be recommended for release on parole on the expiration of his minimum sentence, must, of necessity, consider the convict's previous criminal record.

We come to the consideration of your second question:

"(b) Whether the Board of Pardons may review the action of such boards of trustees and inspectors and refuse to recommend to the Governor the granting of paroles upon the expiration of the minimum sentence of the board in view of the previous criminal record of the prisoner and other relevent factors."

All three acts of assembly, to wit, the Act of 1901, the Act of 1909, and the Act of 1911, contain the following provision:

"The Governor shall not, except in cases where only the payment of a fine is imposed as the penalty upon conviction, execute any of the rights or powers herein granted unto him, until the Lieutenant Governor, Secretary of the Commonwealth, Attorney General, and the Secretary of Internal Affairs, or any three of them, after

full hearing, upon due public notice and in open session, according to such rules as they shall provide, shall have recommended the said commutations of sentence": section 15 of the Act of 1909; section 15 of the Act of 1911; section 5 of the Act of 1901.

The above-quoted provision contained in the Acts of 1901, 1909, and 1911 is in accordance with and almost a verbatim restatement of the provisions of article IV, sec. 9, of the Constitution of Pennsylvania.

These officers constitute the Board of Pardons and, therefore, these provisions must be considered to mean that the Governor may only order the release of convicts on parole upon a favorable recommendation of at least three members of the Board of Pardons. If the Board of Pardons does not recommend the release of a convict on parole, there is no authority in the Governor to grant such parole, despite the fact that said parole has been recommended, in the first instance, by the boards of trustees or boards of inspectors, as the case may be. The recommendation by the Board of Pardons becomes a prerequisite, therefore.

The Board of Pardons, in making recommendations, is governed by the same requirements imposed upon the boards of trustees in determining whether or not they should recommend a convict for release on parole. Fundamentally, the duty to recommend necessarily includes the duty and obligation to ascertain, examine, and review all the facts that are the necessary and essential basis upon which a recommendation may be predicated.

In view of this duty imposed upon the Board of Pardons it follows that they may, if they so see fit and proper, refuse to recommend to the Governor the release of the convict even though the boards of trustees or boards of inspectors, as the case may be, have recommended the release. To hold otherwise would be to violate both the letter and spirit of the acts of assembly and

substitute for a bona fide conscientious recommendation a mere pro forma and rubber stamp approval by the Board of Pardons of the recommendations of the boards of trustees.

In connection with your request, we have also examined the present practice and procedure in presenting and acting upon recommendations for the release of convicts on parole submitted to the Board of Pardons for action thereon. We find that these matters are submitted to the Board of Pardons with a signed recommendation containing the data required by the acts of assembly. In cases submitted by the board of trustees of the Eastern State Penitentiary, the recommendations are backed up by the previous criminal record of the convict. These recommendations are advertised by the respective boards of trustees or inspectors and a copy of the advertisement is attached thereto. They are printed in the calendar of the Board of Pardons in the following manner:

"Parole recommendations of Board of Pardons of Eastern State Penitentiary and Western State Penitentiary.

"Recommendations of board of inspectors, etc., of counties for the release of prisoners under the Act of May 11, 1901."

The question arises as to whether this procedure complies with the requirement contained in section 5 of the Act of 1901 and sections 15 of the Acts of 1909 and 1911, which provide that the Governor shall not exercise any of the rights to parole or commute sentences until the same is recommended by the Board of Pardons "after full hearing, upon due public notice and in open session, according to such rules as they [Board of Pardons] shall provide".

We understand that the Board of Pardons has never adopted any rules governing or prescribing the method of complying with this requirement. It is our opinion that the present practice and procedure on recommenda-

tions for paroles submitted by the boards of trustees and the boards of inspectors does not conform with the above requirement, and we would suggest that the Board of Pardons adopt such rules as will prescribe a procedure that will comply with the requirement of a full hearing, due public notice and in open session, as provided by the acts of assembly.

In conclusion, it is our opinion, and you are so advised, that:

(*a*) The boards of trustees or inspectors of the penitentiaries and county jails, when acting upon petitions for paroles by prisoners who have served their minimum sentence, must consider not only their behavior records while in prison, but also the nature and circumstances of the crime for which the prisoner was committed, his personal history and habits prior to his commitment, which personal history must include the consideration of his previous criminal record, the nature and circumstances of said prior crimes, from all of which factors they are to determine whether or not "there is reasonable probability that such applicant will live and remain at liberty without violating the law".

(*b*) The Board of Pardons may, and, we might say, must, investigate and ascertain the facts in each case recommended by the boards of trustees and boards of inspectors for parole of convicts under the provisions of the Acts of 1909 and 1911, review the action of said boards and arrive at its own independent conclusion as to whether it is satisfied that the recommendations of the boards are proper and warranted by the facts in each case. In arriving at its decision, the Board of Pardons must also take into consideration all relevant factors such as behavior, nature, and circumstances of the crime, previous criminal record, nature and circumstances of previous crimes, etc., and if, upon consideration of all these factors, it is satisfied that there is "reasonable probability that such applicant [convict] will live and

remain at liberty without violating the law" it shall recommend to the Governor that the prisoner be released on parole.